UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TERRA ROSS-CALEB, ALFONDA CRAWFORD,                    **DECISION**
JEWANTA DESARDOUIN, THERESA SMITH,                     **and ORDER**
JEAN CLAUDE DESARDOUIN

              Plaintiff,                               08-CV-6548
v.

CITY OF ROCHESTER, and VINCENT MCINTYRE,
as aider and abettor,

              Defendants.
_____

                          INTRODUCTION

     Plaintiffs Terra Ross-Caleb, ("Ross-Caleb") Alfonda Crawford,
("Crawford") Jewanta Desardouin, ("Ms. Desardouin") Theresa Smith,
("Smith") and Jean Claude Desardouin ("Mr. Desardouin") all current
or former employees of the defendant City of Rochester ("the
City"), bring this action for employment discrimination against the
City and defendant Vincent McIntyre ("McIntyre"), claiming that
they were discriminated against on the basis of their gender, were
retaliated against, or were subjected to a hostile work
environment.  Plaintiffs bring causes of action pursuant to Title
VII of the Civil Rights Act of 1964 (codified at 42 U.S.C. §
2000(e), et seq.); Section 1983 of Title 42 of the United States
Code, and the New York Human Rights Law.

     Defendants now move for summary judgment against the
plaintiffs on all causes of action.  For the reasons set forth
below, I grant defendants' motion for summary judgment in its
entirety, and I dismiss plaintiffs' claims with prejudice.

BACKGROUND

This action is brought by five current or former employees of the City of Rochester, all of whom claim that they were subjected to some form of gender discrimination or retaliation by the defendants during their employment.  The employees were employed as security guards for the City of Rochester, or as a security guard supervisor.[1]  Of the five plaintiffs, two were fired, two remain working for the city, and one claims that she was constructively discharged.  Although some of the factual allegations contained in the Complaint are common to some of the plaintiff's, each plaintiff alleges distinct and separate allegations of discrimination and/or retaliation.  Each plaintiff's allegations, which are largely contested by the defendants, are set forth separately below.

Plaintiff Jewanta Desardouin

Plaintiff Jewanta Desardouin ("Ms. Desardouin") was hired by the City of Rochester as a security officer in February, 1988.  At some point during her employment with the City, she was promoted to the position of Supervisor.  As a Supervisor, Ms. Desardouin reported directly to the Security Superintendent for the City of

---

[1] Although plaintiff Jean Claude Desardouin is identified as a "maintenance worker" in plaintiffs' Complaint (see Complaint at ¶ 11) he has submitted an affidavit in which he identifies himself as a Security Officer.  Affidavit of Jean Claude Desardouin at ¶ 14.  Defendants also identify Jean Claude Desardouin as a Security Guard.  Accordingly, the Court considers Jean Claude Desardouin to have been employed as a Security Guard, and not a maintenance worker.

Rochester.   Both the Security Superintendent and Ms. Desardouin ultimately reported to Vincent McIntyre, ("McIntyre" or "Chief McIntyre") the Chief of Security, who was the highest-ranking official in the Security Department.

Ms. Desardouin claims that in May, 2007, Chief McIntyre began making sexual advances towards her and another plaintiff, Theresa Smith.   Although Ms. Desardouin does not detail what sexual advances were made, she claims that McIntyre referred to her and Theresa Smith as "Thelma and Louise."   She also claims that McIntyre, on at least a weekly basis, intimated that Ms. Desardouin's husband, plaintiff Jean Claude Desardouin, was not sexually satisfying her. Ms. Desardouin, who supervised plaintiffs Terra Ross-Caleb, Alfonda Crawford, and Theresa Smith, also claims that she observed McIntyre sexually harass these women, and alleges that these women complained of McIntyre's conduct towards them on a regular basis.

Ms. Desardouin alleges that she and the other female plaintiffs met with a representative of the City of Rochester's Office of Integrity to complain about McIntyre's conduct, but that the representative informed them that nothing could be done to change McIntyre's behavior.   Thereafter, in January, 2008, Ms. Desardouin alleges that she formally complained to an officer in the Professional Standards Section of the Rochester City Police Department about McIntyre's conduct.  Ms. Desardouin alleges that

two officers from the police department conducted a "sham" investigation, and refused to listen to her allegations. She claims that the investigation was abandoned with no findings and no follow up actions.

On January 15, 2008, Ms. Desardouin filed a Complaint against McIntyre and the City of Rochester with the Equal Employment Opportunity Commission ("EEOC"). Ms. Desardouin alleges that after she filed the complaint, McIntyre retaliated against her by ordering her to discipline plaintiff Terra Ross-Caleb for violating the department's policy on uniforms, despite Ms. Desardouin's belief that Ross-Caleb was not in violation of the uniform policy.

Ms. Desardouin filed the instant federal Complaint in December, 2008, and she claims that McIntyre continued to retaliate against her, and create a hostile work environment. She claims that retaliatory conduct included being given an increased workload and being assigned administrative tasks that were not given to male supervisors. She further claims that her computer was tampered with in retaliation for filing the federal Complaint. Although plaintiff alleges that her computer was tampered with in retaliation for filing her federal Complaint in December, 2008, (See Affidavit of Jewanta Desardouin at ¶ 22 (alleging that her computer was tampered with after filing her Complaint in December)) she later states that her computer was tampered with in either October or November, 2008, one to two months prior to her filing

her federal Complaint. <u>See</u> Affidavit of Jewanta Desardouin at ¶ 23 (alleging that the tampering occurred in either October or November 2008).

Ms. Desardouin alleges that in October or November 2008, she sent a secret audio recording (that she later admitted she made) of McIntyre and another Supervisor, Eric Cotton, allegedly discussing tampering with her computer.  She claims that in February, 2009, four months after she submitted the audiotape, and three months after she filed her federal Complaint, she was fired for making the surreptitious recording.

<u>Plaintiff Jean Claude Desardouin[2]</u>

Jean Claude Desardouin was hired as a Security Officer for the City of Rochester in 2004.  Mr. Desardouin, who is married to plaintiff Jewanta Desardouin, is black and of Haitian descent.  In March, 2007, Mr. Desardouin was accused of sexual harassment by maintenance employees of the City of Rochester.  He claims that the City of Rochester failed to conduct a thorough investigation of the claims, and used the allegations as a pretext for firing him. Indeed, he claims that the sexual harassment allegations, which were made in March, 2007, were "fabricated" in retaliation for Ms. Desardouin's complaints of sexual harassment, which claims,

---

[2] Jean Claude Desardouin's first name is hyphenated in some of plaintiffs' papers, such as plaintiffs' memorandum in opposition to Defendants' motion for summary judgment, and not hyphenated in others, such as the Complaint.  This court will not hyphenate Mr. Desardouin's first name.

according to Ms. Desardouin,  were first made in January, 2008. See affidavit of Jean Claude Desardouin at ¶ 19 ("I believe that I was subject to retaliation when defendant terminated me [on December 2007] and fabricated the sexual harassment allegations for my spouse's engagement in protected activity . . . ."); affidavit of Jewanta Desardouin at ¶ 13 ("In or about January 2008, I complained to . . . the Rochester City Police Department about McIntyre's . . . sexual comments and innuendo).  Although Mr. Desardouin does not explain how the retaliatory conduct against him could have taken place prior to the actions of Ms. Desardouin that allegedly prompted the retaliation, and does not allege any act by any defendant suggesting that he or black or Haitian employees were disparaged, or ridiculed, he nevertheless alleges that he was retaliated against, and treated differently than non-Haitian males who were accused of sexual harassment.  Mr. Desardouin, whose employment was terminated in May of 2007, filed an administrative complaint of discrimination on September 2, 2008.

Plaintiff Theresa Smith

Theresa Smith, an African-American female, began working as a Security Officer with the City of Rochester in July, 2000. According to Smith, Chief McIntyre harassed her by referring to her and Ms. Desardouin as "Thelma and Louise" and by suggesting that

Ms. Smith's husband[3] failed to have sex with her.   Smith claims that McIntyre "stalked" her, and often commented, in a lascivious manner, on her physical appearance and attractiveness.   Smith does not indicate the time frame in which this activity took place.

Smith contends that in June 2007, she was promised by an unidentified person that she would receive a promotion.   She claims, however, that the promotion was given to a less qualified woman, whose ethnicity is not identified by Smith.

Plaintiff alleges that she witnessed McIntyre engage in acts of sexual harassment towards other women.   Plaintiff alleges that she and Ms. Desardouin formally met with a City representative sometime in late 2007 to complain of McIntyre's behavior, but that nothing was done to stop his harassing behavior, and the women were told to "stay away" from McIntyre, their boss.   Smith claims that in January 2008, she complained of McIntyre's behavior to a Diversity Coordinator, but that to her knowledge, no investigation or remedial action took place.   Thereafter, she claims she was transferred to a different work location, was more intensely scrutinized by McIntyre, and was asked to perform twice as many inspections of a particular parking lot than were required under

---

[3] It is not clear from the Complaint whether Ms. Smith was married or dating.   According to evidence in the record, however, the man McIntyre referred to when making insinuations about Ms. Smith's sexual activities was her husband.

the City's policy.  She also claims that she was investigated for working too much overtime, and was passed over for promotion.

Smith alleges that after she was transferred to another location, McIntyre personally intervened to change her schedule so that she would have to report tho his work location, and thus be subject to his continued harassment.

Alfonda Crawford

Alfonda Crawford, an African-American female, has worked as a security guard for the City of Rochester since October, 2004. Crawford contends that on one single occasion, she was subjected to unwelcome comments by McIntyre, based on her sex.  Specifically, she claims that on April 14, 2007, just after she returned to work from maternity leave, as she walked into a meeting, Chief McIntyre stated "just because you just had a baby does not mean you can walk into my meeting late."  According to McIntyre, this comment was made in light-hearted manner to celebrate the fact that Ms. Crawford was a new mother.

Crawford further contends that in August, 2007, she was denied a transfer to a day shift, though she does not allege that the denial was in any way related to her gender, race, or any other protected category.  She claims that shortly after she was denied the transfer request, three employees who were transfered from the animal control department (the race and gender of whom is not

identified) were given day shift assignments.  Crawford alleges that in September, 2007, she was promised a transfer to day shift upon completion of the academic semester, as she was enrolled in college courses.  She alleges that sometime in or after November, 2007, she was transferred to the day shift immediately, and as a result, could not complete her semester.  Plaintiff does not allege that the decision to transfer her to the day shift was based on her gender, race, or other protected category.

In 2008, the Security Department allegedly implemented a policy of not allowing security officers of the same race to partner together on grounds that mixed-race teams of officers would appear more diverse to the community.  Crawford contends that she was offended by the notion that assignments would be based on race.

Thereafter, plaintiff made several complaints, both internally and to the EEOC, about the partnering policy, and about McIntyre's alleged behavior.  Crawford claims that she never saw the results or evidence of any investigation based on her complaints.

Crawford claims that since she began her employment in 2004, her supervisor Eric Cotton routinely made unwanted sexual advances towards her.  She claims that in 2009, she received a letter of discipline from Cotton for taking vacation days, despite the fact that the vacation days had been previously approved.  She claims that when she complained of this to McIntyre, McIntyre rescinded the letter of discipline.  Plaintiff alleges that on two occasions

in 2010, she requested and received permission to take time off, only to be told later that the absences would be considered unauthorized. Crawford claims that upon complaining of this behavior to her union, the situation was resolved.

Terra Ross-Caleb

Plaintiff Terra Ross-Caleb, a Caucasian female, began working for the City of Rochester in August 2006 in the Animal Control Division.   In August, 2007, she was laid off from the Animal Control Department, and transferred to the Security Department of the City of Rochester, where she worked as a Security Guard. According to Ross-Caleb, shortly after her transfer to the department, McIntyre, who is African-American, remarked that "it was good to see white people coming into the Department," and that "we can't have all the black females on the day shift."

According to Ross-Caleb, McIntyre continuously made unwanted sexual remarks, in a lascivious manner,  about how good she looked in her uniform, and how nice her hair looked.  She claims that she observed McIntyre sexually harass plaintiffs Crawford, Smith, and Jewanta Desardouin.  According to Ross-Caleb, in September 2007, approximately 3 weeks after she transferred into the Security Department, McIntyre called her on her work cell phone and asked her to meet him at a recreation center.  When she arrived, McIntyre allegedly got in the back seat of her patrol car, and started discussing intimate details of his life, and then asked her about

intimate details of her life.  When Ross-Caleb explained that she was married, McIntyre abruptly left the vehicle.

According to Ross-Caleb, prior to knowing that she was married, McIntyre praised her work.  However, upon learning that she was married, Ross-Caleb alleges that his attitude towards her changed for the worse.  She claims that in October 2007, she received a poor performance evaluation, despite having received stellar evaluations in her previous department.  Ross-Caleb alleges that when she confronted McIntyre about it, he claimed that it was the first time he had filled out an evaluation and did not understand how they were to be filled out.

Ross-Caleb alleges that after September 2007, and after McIntyre had previously commented how good she looked in her uniform, McIntyre began harassing her regarding her uniform, and routinely inspecting her uniform to ensure compliance with department regulations.  She claims that McIntyre attempted to force her to wear a button down shirt rather than a turtle neck sweater, which according to Ross-Caleb, was permissible under the guidelines.  Despite guidelines which according to Ross-Caleb permit the wearing of a sweater, McIntyre allegedly sent an email to all employees stating that they were prohibited from wearing sweaters.  Ross-Caleb alleges that she was the only Security Guard subjected to uniform inspections.

According to Ross-Caleb, in December 2007, McIntyre came into the department office on Mt. Reed Boulevard in the City of Rochester, and in her presence, removed a brochure for a women's empowerment class from a bulletin board, and ripped it into pieces.

In January, 2008, Ross-Caleb alleges that she was dispatched to an altercation at a private home by McIntyre, despite the fact that security guards did not have jurisdiction to handle such calls, as private house calls were within the purview of the police department.

In February 2008, Ross-Caleb alleges that she was the only security on the A-shift not to receive a letter of commendation from McIntyre. She further claims that although all other security guards who transferred into the department at the time she did were made permanent employees, she remained a probationary employee.

Ross-Caleb filed an administrative complaint of discrimination against McIntyre in May, 2008. She claims that upon filing the complaint, McIntyre retaliated against her by continuing to harass her about her uniform, and changing her work schedule. She claims that in March, 2009, she was assigned to work in a trailer with no bathrooms, despite claims that she suffered from claustrophobia. When she provided a doctor's note to her supervisor explaining that she suffered from claustrophobia, she claims that she was told that the department could not make special accommodations, and she was not to report to work. Because she had not received any written

order not to return to work, Ross-Caleb reported for work, and was written-up for doing so.  After she left work, she received a call from the head of the Security Department informing her that she was not to return to work until being examined by a City of Rochester doctor.  After six weeks, and after initially refusing to submit to a medical examination, she was examined by a City doctor, who, according to the plaintiff, recommended that she not be assigned to work in the trailer.  During the hiatus, plaintiff was not paid.

In May, 2009, plaintiff was placed on suspension for reporting to work back in March, 2009, after being told by the Department head not to return to work.  When plaintiff returned to work in June 2009, she was reassigned to the trailer location, despite the recommendation of the City doctor and her personal doctor that she not be assigned to work there.  Ross-Caleb worked at the trailer location until August 2009, when she claims she was constructively discharged.

## DISCUSSION

### I.   Defendants' Motion for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  When considering a motion for summary judgment, all genuinely disputed

facts must be resolved in favor of the party against whom summary judgment is sought.  Scott v. Harris, 550 U.S. 372, 380 (2007). If, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party, a grant of summary judgment is appropriate.  Scott, 550 U.S. at 380 (citing Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-587 (1986)).  Defendants' motion as to each plaintiff is discussed below.

II.  Defendant Jean Claude Desardouin

Plaintiff Jean Claude Desardouin claims that he was unlawfully retaliated against under Title VII when he was fired from his position as a Security Guard with the City of Rochester.  According to the defendants, Mr. Desardouin was fired on May 16, 2007, (effective May 22, 2007) after an investigation revealed that he had sexually harassed female employees.  Mr. Desardouin alleges that he was terminated as of December 7, 2007, when his union grievance objecting to his firing was denied.

It is undisputed that Mr. Desardouin did not file an administrative complaint of discrimination/retaliation until September 2, 2008, 475 days after May 16, 2007, and 270 days after December 7, 2007.  Because there is a 300 day limitations period for filing an administrative complaint of discrimination, and because this court may not consider claims of discrimination that

were not timely filed or tolled, the court must determine whether or not Mr. Desardouin filed his discrimination complaint with the EEOC within the 300 day limitations period for filing such complaints.   See 42 U.S.C. § 2000e-5(e)(1) (charges of discrimination filed with the EEOC or State agency with authority to investigate and enforce anti-discrimination laws must be filed within 300 days after the date of the allegedly unlawful practice).

I find that Mr. Desardouin's employment was terminated on May 16, 2007, and therefore, his EEOC complaint is untimely.  Defendant has produced evidence, including an arbitrator's decision referencing the May 16, 2007 termination letter, establishing that the City terminated Mr. Desardouin's employment on May 16, 2007, effective May 22, 2007.  Even Mr. Desardouin acknowledges, at paragraphs 225 and 226 of plaintiffs' counter-statement of facts, that he received a letter dated May 16, 2007 indicating that his employment was terminated.  This evidence establishes that Mr. Desardouin's employment was terminated no later than May 22, 2007.

Because Mr. Desardouin's employment was terminated in May, 2007, his EEOC complaint filed in September, 2008, was untimely. As a result, this court may not consider Mr. Desardouin's untimely claims, and I grant defendants' motion to dismiss Mr. Desardouin's claims in their entirety.

Mr. Desardouin claims that he actually was not terminated from his employment until December, 2007, when his grievance regarding

the termination of his employment was denied.  It is well settled, however, that for purposes of determining the 300 day time limit for filing an administrative complaint, the limitations period begins with the adverse action (in this case termination of employment) rather than conclusion of any grievance regarding the adverse action.  See Bates v. Long Island R. Co., 997 F.2d 1028, 1037 (2nd Circ., 1993)("The fact that [plaintiff] grieved his termination does not affect the accrual date of his discrimination claim and does not toll the applicable statute of limitations.")  Because Mr. Desardouin's administrative complaint of discrimination was untimely, I dismiss his claims in this action.

   III. Plaintiff Alfonda Crawford

   Plaintiff Alfonda Crawford alleges that she was subjected to a hostile work environment, and was retaliated against for complaining of sexual harassment.  With respect to her claims of a hostile work environment, Crawford alleged in her Complaint that the harassment consisted of unwelcome comments made by McIntyre based on her gender and maternal status.  However, in her affidavit in opposition to Defendant's Motion for Summary Judgment, plaintiff includes allegations that she was subjected to sexual advances from Eric Cotton, a supervisor that plaintiff alleges has been suspended from his employment by the City for engaging in sexual harassment.  These claims against Cotton were not alleged in plaintiffs' Complaint, nor have the defendants responded to these claims, as

defendants have declined to file reply papers in further support of their motion for summary judgment. Further, no allegations against Eric Cotton were alleged in Crawford's administrative complaint of discrimination to the New York State Division of Human Rights. <u>See</u> Exhibit F to Plaintiffs' Opposition to Defendants' Motion for Summary Judgment.

It is well settled that prior to bringing an employment discrimination claim in federal court, a plaintiff must first exhaust his or her administrative remedies by filing a complaint with the Equal Employment Opportunity Commission, or with a state agency authorized to investigate the allegations. 45 U.S.C. § 2000e-5(c). Because plaintiff failed to raise claims of harassment by Cotton in her administrative complaint she may not raise such claims in her federal lawsuit unless she can establish that the conduct she complains of is reasonably related to the conduct complained of in the administrative charge. <u>Holtz v. Rockefeller & Co., Inc.</u>, 258 F.3d 62, 83 (2nd Cir. 2001). Conduct may be considered reasonably related where: (1) the conduct complained of in the federal complaint can reasonably be expected to grow out of the administrative claims of discrimination and therefore fall within the administrative investigation; (2) the conduct is retaliatory; or (3) the conduct complained of in the federal complaint is identical to conduct that was alleged in the

administrative complaint.  <u>Butts v City of New York Dept. of Hous.</u>
<u>Pres. & Dev.</u>, 990 F2d 1397, 1401-1403 (2nd Cir. 1993).

In the instant case, plaintiff complained in her
administrative complaint of harassing statements by McIntyre, and
failure to receive a promotion.  She now alleges, in addition to
those claims, that her supervisor Eric Cotton routinely asked her
out on dates.  Plaintiff does not identify the timing of the
alleged conduct, nor that the conduct was unwanted.  Nor can it be
said that the claims against Cotton are reasonably related to the
claims plaintiff made against McIntyre in her administrative
complaint, as the claims involve different actions by different
actors.  <u>See</u>, <u>e.g.</u>, <u>Leskovec v. Circuit Works Corp.</u>, 2008 WL
5236006, *2 (N.D. Ill., Dec. 15, 2008)(administrative charge of
discrimination not reasonably related to federal claim where
allegations of discrimination in federal complaint involved
different incidents of discrimination by different actors who were
not identified in administrative charge); <u>Fleming v. Verizon New</u>
<u>York, Inc.</u>, 419 F.Supp.2d 455 (S.D.N.Y., 2005)(discrimination
charge not reasonably related to administrative charge where
federal complaint accused actors who were not identified in
administrative charge).  Accordingly, the court will not consider
plaintiffs allegations against Cotton in determining whether or not
she has established the existence of a hostile work environment.

To state a claim of discrimination based on a hostile work environment, a plaintiff must establish the existence of a workplace that is "permeated with discriminatory intimidation, ridicule and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment." Torres v. Pisano, 116 F.3d 625, 630-631 (2d. Cir.1997) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)).  "Conduct that is merely offensive and not severe or pervasive enough to create an objectively hostile or abusive work environment" will not establish a Title VII discrimination claim.  Torres, 116 F.3d at 631 (2d Cir.) (internal quotes omitted); Gallagher v. Delaney, 139 F.3d 338, 346 (2d Cir.1998) ("A reasonable person would have to find the environment hostile or abusive, and the victim must have subjectively so perceived it.").  "Stray racial remarks or slurs are not actionable under Title VII." Badrinauth v. Touro College, 1999 WL 1288956, *4, (E.D.N.Y. Nov. 4, 1999). Rather, "there must be a steady barrage of opprobrious racial comments." Snell v. Suffolk County, 782 F.2d 1094, 1103 (2d Cir.1986).  The conduct alleged, however, does not need to be so severe as to cause severe emotional or physical distress.  Harris, 510 U.S. at 21.  Rather, conduct that "detract[s] from employees' job performance, discourage[s] employees from remaining on the job, or keep[s] them from advancing in their careers" may be actionable under Title VII. Harris, 510 U.S. at 21.

In the instant case, Crawford alleges that upon her return from maternity leave, McIntyre "routinely" made unwelcome comments based on her sex or maternal status.  She points to only one incident, however, in which McIntyre told her "just because you just had a baby does not mean you can walk into my meeting late." According to McIntyre, the comment was made light-heartedly, in a celebratory manner, to draw attention to the fact that the plaintiff had recently had a baby, and, after realizing that Crawford took exception to the comment, he apologized to her in writing for making the comment, and explained his benevolent intent.  Plaintiff cites no other instances of inappropriate comments made by McIntyre to her.  Nor does plaintiff allege that any adverse action was taken against her because of her gender, race, or maternal status.  Although she claims that she was denied a transfer to a day shift, she does not allege that the denial was based in any manner on her gender, race, or maternal status. Accordingly, I find that plaintiff has failed to establish any evidence of a hostile work environment.

Crawford alleges that after she internally complained of discrimination at some unspecified time in 2008, and after she filed a formal complaint of discrimination with the New York State Division of Human Rights in May, 2008, she was retaliated against by Cotton in that he issued her a letter of disciple for taking unauthorized time off from work.  Crawford admits, however, that

McIntyre rescinded the letter by throwing the letter in the garbage.  Affidavit of Alfonda Crawford at ¶ 29.  She further claims that in July 2010, she was approved for vacation time, and then told by Cotton that the time was not approved, and that in November, 2010, she was initially granted vacation time, then told it was not authorized, and then told again that it was authorized.

To establish a prima facie case of retaliation, a plaintiff must show that: (1) she participated in a protected activity; (2) the employer was aware of the activity; (3) an adverse employment action was taken against her; and (4) a causal connection exists between the protected activity and adverse action.  Papelino v. Albany College of Pharmacy of Union University 633 F.3d 81, 91 (2nd Cir. 2011).

Crawford's claims fail to establish that she was retaliated against for making a complaint of discrimination.  Her claims that in 2010 she was retaliated against for conduct occurring in 2008 fail to establish any connection between the protected activity of complaining about discrimination, and the defendants' actions.  While retaliation may be established by alleging that retaliatory activity took place soon after the plaintiff engaged in protected activity, in this case, where the alleged retaliation occurred more than two years after the protected activity, plaintiff can not establish any temporal relationship between the two actions.  See, e.g., Caskey v. County of Ontario, --- F.Supp.2d ----, 2011 WL

3319533, *3-4 (W.D.N.Y., August 02, 2011)(Larimer, J.)(nine month lapse between protected activity and alleged retaliation too long to establish close temporal proximity of alleged retaliation).

With respect to Crawford's claim that shortly after she complained of retaliation, she was given a letter of discipline that was shortly thereafter removed, such a claim fails to establish an adverse action.  To establish a claim of an adverse action that was taken in retaliation for engaging in protected activity, a plaintiff must demonstrate the adverse action is one that would likely dissuade a reasonable employee from engaging in a protected activity.  See Burlington Northern & Santa Fe Railway Co. V. White, 548 U.S. 53, 68 (2006).  Here, plaintiff's allegation that she received a letter of discipline that was shortly thereafter rescinded fails to allege activity that would dissuade a reasonable employee from engaging in a protected behavior under Title VII.  I therefore grant defendants' motion to dismiss plaintiff's claims of retaliation.

IV.  Plaintiff Theresa Smith

Smith claims that she was subjected to a hostile work environment, and was retaliated against for engaging in protected activity under Title VII.  As stated above, to state a claim of discrimination based on a hostile work environment, a plaintiff must establish the existence of a workplace that is "permeated with discriminatory intimidation, ridicule and insult, that is

sufficiently severe or pervasive to alter the conditions of the victim's employment." Torres, 116 F.3d at 630-631 (quoting Harris, 510 U.S. at 21. "Evaluating a hostile environment [claim] involves reviewing the totality of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Miller v. McHugh, --- F.Supp.2d ----, 2011 WL 4091466, *8 (S.D.N.Y., September 14, 2011)(quoting Harris, 510 U.S. at 23)

In the instant case, I find that plaintiff has failed to allege that McIntyre engaged in severe or pervasive conduct that could establish the existence of a hostile working environment.

Smith alleges that on several occasions, McIntyre speculated to her, in front of other employees, as to whether Smith had had sexual relations with her husband, or whether she would be having sexual relations with her husband that evening.  Additionally, McIntyre allegedly stared at Smith in a lascivious, desirous manner, and complemented her on how good she looked in her uniform, or how nice her hair looked.  While these allegations allege vulgar and obnoxious conduct, plaintiff has failed to establish that the conduct was so pervasive or severe as to create a hostile working environment.  There is no evidence establishing the frequency of the unwanted comments or stares.  It is undisputed that plaintiff

began her employment in 2000, and has remained employed with the
City. According to her statement to police investigators, however,
the unwanted comments did not begin until April or May, 2007, and
did not last beyond July, 2007.  See Investigation Deposition of
Theresa Smith, Docket Item 12-16, at p. 1; Statement of Theresa
Smith, Docket Item 12-16, at p. 1. She provides no evidence,
however, as to how frequently the comments were made during this
two to three month period.  Because it is the plaintiff's burden to
establish that the conduct was so severe or pervasive that it
affected the plaintiff's conditions of employment, I find that
plaintiff has failed to meet this burden.

Moreover, while the conduct complained of is without question
juvenile, vulgar, and unprofessional, the evidence presented by
plaintiff does not establish that it was so severe as to create a
hostile work environment.  There is no allegation or evidence that
McIntyre engaged in conduct that was physically threatening or
humiliating, which conduct could establish a hostile work
environment.  Moreover, as the Supreme Court has stated, harassment
that includes sexual overtones does not necessarily constitute
sexual harassment for purposes of Title VII.  Oncale v. Sundowner
Offshore Servs., Inc., 523 U.S. 75, 80 (1998) ("Title VII does not
prohibit all verbal or physical harassment in the workplace; it is
directed only at 'discriminat [ion] ... because of ... sex.' We
have never held that workplace harassment, even harassment between

men and women, is automatically discrimination because of sex
merely because the words used have sexual content or
connotations.")(quoting <u>Harris</u> 510 U.S. at 25).  Here, even
assuming that McIntyre showed incredibly poor judgment by
discussing aspects of Smith's sex life at work, there is no
evidence that the comments were directed at Smith because she is a
female.  <u>See</u> <u>e.g.</u> <u>Treat v. Tom Kelley Buick Pontiac GMC, Inc.</u>, 710
F.Supp.2d 777 (N.D. Ind., 2010)(where evidence established that
defendant used vulgar language to discuss sexual escapades with
both men and women, plaintiff failed to establish that language
directed at her was because of her gender).  Plaintiff has failed
to allege or establish that only females were subjected to vulgar
and childish comments, and thus has failed to establish that the
comments were made because of the plaintiff's gender.  As for
McIntyre's alleged compliments and staring at the plaintiff, there
simply is insufficient evidence brought by the plaintiff to
establish that the conduct was so severe or pervasive as to create
a hostile working environment.  Accordingly, I grant defendants'
motion for summary judgment with respect to Smith's hostile work
environment claims.

Smith also claims that she was retaliated against for
complaining of harrassment by McIntyre.  Specifically, she alleges
that she was passed up for a promotion, was investigated for
improperly using overtime, and was required to perform extra duties

that were not assigned to other officers.  I find, however, that plaintiff has failed to establish that she was retaliated against, or has failed to rebut the defendant's non-discriminatory explanation for taking any alleged adverse action against Smith.

Claims of discrimination, including discriminatory retaliation, are analyzed under the well-recognized burden shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) and later refined in Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248 (1981) and St. Mary's Honor Center v. Hicks, 509 U.S. 502 (1993).  Under the McDonnell Douglas test, the plaintiff bears the burden proving a prima facie case of discrimination.  If the plaintiff succeeds in stating a prima facie case, the burden of production shifts to the defendant to state a legitimate, non-discriminatory reason for taking the employment action at issue.  Should the employer meet that burden, the burden of production then shifts back to the plaintiff to show that the reasons proffered by the employer were not the true reasons for the adverse employment action, but instead were a pretext for discrimination, and that discrimination was the real reason.  See Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981); St. Mary's Honor Center v. Hicks, 509 U.S. 502-06 (1993).

In the instant case, I find that plaintiff has failed to state a prima facie case of retaliation with respect to her claim that in retaliation for complaining of discrimination, she was required to

inspect a parking area four times a day, rather than two times a day as set forth in the Security Department's manual. Unrebutted evidence provided by the defendant establishes that although the parking area was to be inspected a minimum of two times a day, there was no prohibition on inspecting it more often. Moreover, defendant has produced a written directive indicating that all guards were required to inspect the parking area four times per day. See Docket Item No. 12-8 at p. 3.

With respect to plaintiff's contention that she was investigated for improper use of overtime, there is no allegation or evidence that plaintiff was disciplined for alleged improper use of overtime, or that she was singled out for this scrutiny. Accordingly, plaintiff has failed to establish that the investigation constiuted an adverse employment action.

Finally, plaintiff alleges that she was promised a promotion in June, 2007 (just as she was allegedly being subjected to McIntyre's unwelcome comments) but that the promotion was instead given to another female employee. This allegation fails to allege a claim for retaliation, as the evidence in the record reveals that Smith did not complain of harressment until December, 2007. Because the promotion occurred prior to Smith engaging in a protected activity, she has failed to establish retaliation. Accordingly, I grant defendants' motion to dismiss plaintiff Smith's claims of retaliation.

V.    Plaintiff Jewanta Desardouin

Plaintiff Jewanta Desardouin, the wife of plaintiff Jean Claude Desardouin, claims that she was subjected to a hostile work environment, and was retaliated against for complaining of discrimination.  With respect to her claims of a hostile work environment, Ms. Desardouin, who had worked for the City since 1988, claims that in May, 2007, just as her husband was being investigated and fired for sexually harassing female employees, McIntyre began harassing her by making sexual advances towards her, and, on at least a weekly basis, claiming that her husband was not "taking care" of her.

For the reasons discussed above, I find that plaintiff has failed to allege the existence of a hostile work environment. There is no allegation or evidence of severe conduct on the part of McIntyre, such as unwanted touching, or that the conduct was pervasive.  Although the alleged comments made by McIntyre that Ms. Desardouin's husband was not taking care of her are vulgar, there is no evidence that they were of a frequency to constitute a pervasive atmosphere of hostility.  See Anderson v. G.D.C., Inc., 281 F.3d 452, 459 (4th Cir.2002) ("[Title VII] is not designed to purge the workplace of vulgarity.") (citations omitted).

Ms. Desardouin alleges that she was retaliated against for complaining of discrimination, and filing administrative and federal complaints of discrimination.  She claims that as part of

the retaliation, she was told to discipline plaintiff Ross-Caleb for failing to comply with the Department's uniform requirements, was given an increased workload, was subjected to increased scrutiny, and ultimately, was fired from her employment in February, 2009, 3 months after she filed her federal complaint of discrimination.

With respect to plaintiff's allegation that her employment was terminated in retaliation for filing her federal complaint, even assuming that plaintiff has established a prima facie case of retaliation, I find that she has failed to rebut the defendants' non-discriminatory explanation for terminating her employment. According to the defendants, plaintiff made unauthorized secret audio recordings of McIntyre and other employees in an attempt to prove that McIntyre and other City employees were tampering with her computer, or in other ways harassing her.  The defendants were alerted to Ms. Desardouin's actions when she sent these recordings to the City.  According to the defendants, because secret recording of conversations between employees is a felony, and a serious violation of defendant's policies, Ms. Desardouin was fired after an investigation revealed that she did in fact illegally record the conversations, and initially lied about doing so.   I find defendant's explanation both legitimate and non-discriminatory.

Plaintiff alleges, however, that the defendants' proffered reason is not worthy of credence, and that the real reason she was

fired was because she filed her federal complaint. She has provided no evidence, however, to suggest that the City's reason for firing her was not solely based on the fact that she had been found to have illegally recorded audio conversations of her boss. Because plaintiff can not establish that retaliation for engaging in protected behavior was the motivating factor in defendants' decision to terminate her employment, I find that she has failed to establish that she was retaliated against with respect to the termination of her employment.

Ms. Desardouin further alleges that she was retaliated against for complaining of discrimination by being asked to right up plaintiff Ross-Caleb for a uniform violation, having her computer tampered with, being given an increased workload, and being subjected to additional scrutiny.

With respect to changes in Ms. Desardouin's workload, the defendants contend that at the time Ms. Desardouin complained her workload had increased, her department had experienced the retirement of a supervisor, and the death on an employee. According to the Defendants, the loss of two employees resulted in increased workloads for all employees, including supervisors, such as Ms. Desardouin. Plaintiff has failed to establish that she was subjected to increased workloads to a greater extent than the other supervisors with whom she worked, and accordingly, has failed to establish that she was singled out for retaliation by being given increased work assignments.

Finally, with respect to her claims that McIntyre asked her to discipline Ross-Caleb for not wearing proper work attire, and that she was subjected to increased scrutiny, the record does not reveal that these actions were of such severity as to constitute adverse actions, or conduct that would inhibit a reasonable employee from making a claim of discrimination.  I therefore grant defendant's motion for summary judgment with respect to plaintiff's claims of retaliation.

## VI.  Plaintiff Terra Ross-Caleb

Plaintiff Terra Ross-Caleb alleges that she was subjected to a hostile working environment that resulted in her constructive discharge, and that she was retaliated against for complaining of discrimination.  Specifically, with respect to her claims of a hostile work environment, she claims that McIntyre stared at her in a lascivious and sexual manner, and made gratuitous remarks about how good she made her uniform look.  She further alleges that McIntyre called her on her city issued cell phone to set up a meeting with her in her patrol car, at which time he divulged personal and intimate details of his life to her.  She claims that he then inquired as to her marital and familial status, and that once he learned that she was married to an African-American man, his attitude towards her soured, and he began to nitpick and discipline her with respect to her uniform, and give her poor evaluations.

While defendants deny the plaintiff's allegations, I find that even if Ross-Caleb's allegations are accepted in the light most favorable to her, she has failed to establish the existence of a hostile work environment.   The allegations fail to establish a workplace permeated by gender-based ridicule, intimidation, or insult, or conduct so severe or pervasive that it would alter the terms or conditions of her employment.   <u>See</u>, <u>Cox v. Rumsfeld</u>, 369 F.Supp.2d 748, 758 (E.D.Va., 2005)(no hostile work environment claim where supervisor asked subordinate about her marital status, and revealed to her, without solicitation, stories of his sexual exploits).   There is no allegation that McIntyre engaged in any unwanted physical contact.  With respect to plaintiff's claims that McIntyre improperly disciplined or scrutinized her uniform, unrebutted evidence submitted by the defendants reveals that McIntyre disciplined and counseled both male and female employees with respect to wearing the department uniform in accordance with department regulations.   <u>See</u> Docket Item 12-19 (containing emails from McIntyre recommending counseling or discipline for both male and female employees whose uniforms were not in accordance with department regulations).   Nor does plaintiff allege that the unwanted comments occurred with great frequency or over a significant period of time.   Accordingly, I find that Ross-Caleb has failed to establish a hostile work environment.

Plaintiff alleges that in March of 2008, she filed a grievance for race discrimination, and that on May 9, 2008, she filed a claim of race discrimination with the EEOC.  She claims that following the making of those complaints, she was retaliated against.

Initially, I note that throughout Ross-Caleb's papers, she contends that the administrative complaint that she filed against the City was based on _race_ discrimination, not _gender_ discrimination  See Affidavit of Terra Ross-Caleb at ¶ 58, 61.  The Complaint in this action, however, alleges only gender discrimination, not race discrimination.   See Complaint at ¶ 1, 5, 50, 59, and 83.  If in fact plaintiff alleged only racial discrimination in her administrative complaint, her claims of gender discrimination may not be ripe for consideration by this court, as this court may only consider claims that were brought before, or reasonably related to claims that were brought before, an appropriate administrative agency, such as the EEOC or New York State Division of Human Rights.  However, because neither party has submitted plaintiff's EEOC complaint, and the defendants have not raised the issue in their moving papers, this court is unable to determine whether or not gender claims were brought before the EEOC.  In any event, because I find, for the reasons expressed below, that plaintiff has failed to establish her claims of retaliation, I find that these claims may be dismissed.

Ross-Caleb alleges that after she complained of harassment, she was retaliated against by being disciplined with respect to her uniform, being sent out on a dangerous assignment, and being assigned to work in a dangerous and cramped work station that was located in a trailer.  As stated above, however, the unrebutted evidence submitted by the defendants reveals that McIntyre disciplined both male and female employees with respect to their uniforms not meeting department standards.  Undisputed evidence further reveals that the trailer location that plaintiff objected being assigned to was a regular work station to which all security guards could be assigned.  The record further reveals that upon learning that she had been assigned to the post, Ross-Caleb sent a long letter to McIntyre objecting to the assignment, on grounds that it was unsafe for a woman of her size, and that the work site constituted an unsanitary location because of lack of toilette facilities, and likely violated Occupational Health and Safety Standards.  Ross-Caleb repeatedly stated that in her opinion, the workstation constituted a potential liability for the City in case, "god forbid something bad happen while a security guard is on duty at this location."  See Docket item 12-21 (letter from Ross-Caleb to McIntyre).  Ross-Caleb further speculated that her personal vehicle, which she would have to drive to the location, could be subject to spray painting, tire slashing, or that registration information could be taken, and she could be followed home.  Ross-

Caleb suggested that City police officers should staff the work location, and asked not to be assigned to the location.  Upon the defendant's refusal to change plaintiff's assignment, and despite not previously identifying any medical impediments to working at the location, Ross-Caleb then produced a note from her physician stating that, in its entirety: "Subjective [sic]: It is advised that the above patient [Terra Ross-Caleb] not work in a small confined space for medoical [sic] reasons.  It is also advised for medical reasons for her to have easy access to a bathroom at all times."  See Docket Item No. 12-22.  There is no medical explanation as to why plaintiff could not work in a "small confined place" or why plaintiff required "easy access to a bathroom at all times."

Based on the undisputed evidence, it is clear that all security guards were required to work at the trailer location, and that Ross-Caleb was not singled out for assignment to this location for any reason.

Finally, with respect to plaintiff's claim that she did not receive a good work evaluation, plaintiff has failed to establish that any evaluation she received did not properly reflect her work performance.  Defendant has submitted several unrebutted documents revealing that the plaintiff engaged in insubordinate conduct on a regular basis, and was suspended by the Chief of Police for insubordination that occurred on three occasions in 2009.  See

Docket Item no. 12-26 (letter from Chief of Police to Ross-Caleb explaining basis for suspension from work). Because plaintiff has failed to establish that the evaluations she received were not warranted, and did not objectively reflect her work performance, I find that she has failed to establish that she was retaliated against with respect to her evaluation. Because I find that plaintiff has failed to establish any evidence of retaliatory conduct, I grant defendants' motion for summary judgment, and dismiss plaintiff's retaliation claims.

    VII. <u>Remaining claims</u>

    For the reasons set forth above, I find that plaintiff's have failed to state a claim of discrimination under § 1983 of Title 42 of the United States Code, or the New York State Human Rights Law. With respect to those plaintiffs who filed administrative complaints of discrimination with the New York State division of Human Rights, I find that those plaintiffs are barred, as a result of their election to adjudicate those claims administratively, from pursuing their state law claims in this action. <u>See</u> <u>York v. Assoc.</u> <u>of Bar of City of N.Y.</u>, 286 F.3d 122, 127 (2d Cir.2002)(state election-of-remedies provision set forth in § 297(9) of the New York State Executive law divests federal court of jurisdiction over state-law discrimination claims where plaintiffs elected to file administrative claims of discrimination with the New York State Division of Human Rights.

CONCLUSION

For the reasons set forth above, I grant defendant's motion for summary judgment, and dismiss plaintiffs' Complaint with prejudice.


ALL OF THE ABOVE IS SO ORDERED.

S/ Michael A. Telesca
Michael A. Telesca
United States District Judge

DATED:    Rochester, New York
          December 15, 2011